963 F.2d 381
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alan Speights LUSTER, Defendant-Appellant.
 No. 90-50124.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 3, 1991.
Decided May 20, 1992.
 
 1
 Before SCHROEDER and KOZINSKI, Circuit Judges, and HOGAN,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant was convicted of one count of conspiracy and six counts of using counterfeit access devices to automatic teller machines in violation of 18 U.S.C. 1029(a)(1), (a)(3) and (b)(2). He was sentenced to 30 months imprisonment followed by a three year term of supervised release and payment of $238,560.00 restitution.
 
 
 4
 Appellant appeals his conviction alleging error in (1) the District Court's failure to hold a separate hearing on restitution; (2) insufficiency of evidence to convict on Count I for conspiracy to use counterfeit access devices; (3) improper admission of evidence of a past crime; (4) failure to suppress illegally seized evidence; (5) wrongful denial of discovery; and, (6) failure to declare a mistrial based on testimony regarding a polygraph exam.
 
 
 5
 (1) Appellant was convicted on August 8, 1989. On February 16, 1990, he filed a motion for an evidentiary hearing regarding restitution and asked that it be heard at the time of sentencing on February 20, 1990. The motion was denied. Appellant contends that it was error to deny the motion.
 
 
 6
 A separate hearing to determine the amount of restitution is not required. United States v. Smith, 944 F.2d 618, 621 (9th Cir.1991), cert. denied, 112 S.Ct. 1515 (1992). Due process is satisfied if the defendant is afforded an opportunity to present his objections. Id. See also United States v. Cloud, 872 F.2d 846, 855 (9th Cir.), cert. denied, 493 U.S. 1002 (1989). The amount of restitution must be set forth in the indictment or plea agreement, or be "judicially established." United States v. Weir, 861 F.2d 542, 546 (9th Cir.1988), cert. denied, 489 U.S. 1089 (1989).
 
 
 7
 The amount of restitution was "judicially established" by the court here based on the evidence introduced at trial. Appellant's Excerpts of Record (# 16), p. 11. Appellant's "motion for evidentiary hearing to judicially establish amount of loss/restitution," Appellant's Excerpts of Record (# 10), constituted an opportunity to present his objections in written form. In addition, although the court denied the request for a hearing, appellant was afforded an opportunity to be heard orally at the sentencing hearing. Appellant's Excerpts of Record (# 16), p. 12.
 
 
 8
 The procedure used to determine the amount of restitution was constitutionally sufficient.
 
 
 9
 (2) Appellant contends that his conspiracy conviction should be reversed because there was no evidence that he entered into an illegal agreement.
 
 
 10
 Appellant's reliance on United States v. Rubio-Villareal, 927 F.2d 1495 (9th Cir.1991), is misplaced. That opinion has been withdrawn pending rehearing en banc. Moreover, United States v. Rubio-Villareal is factually distinguishable from the case at bar in that Rubio-Villareal does not involve evidence of the same modus operandi by the defendant and other conspirators. Here, the government presented evidence of a common and relatively unique modus operandi.
 
 
 11
 A conspiracy conviction will be overturned for insufficient evidence only if, after viewing the evidence in the light most favorable to the government, no rational jury could have found the essential elements of a conspiracy beyond a reasonable doubt. United States v. Berberian, 851 F.2d 236 (9th Cir.1988), cert. denied, 489 U.S. 1096 (1989). The elements of conspiracy are often necessarily proved by circumstantial evidence. United States v. Thomas, 586 F.2d 123, 132 (9th Cir.1978).
 
 
 12
 There was evidence here of simultaneous cash withdrawals at three different and distant financial institutions in the Los Angeles area several times over a three day weekend. The method of the counterfeit transactions was identical. Under these circumstances, a rational jury could reasonably infer an agreement to accomplish an unlawful objective, even if the co-conspirators were not identified.
 
 
 13
 (3) Appellant contends that he was prejudiced by the erroneous admission of prior crimes evidence.
 
 
 14
 On April 11, 1988, appellant pleaded guilty to two counts of fraudulent use of another's credit card in violation of Cal.Penal Code 484f(2). Three other counts were dismissed. On June 13, 1989, the government filed a notice of intent to introduce evidence regarding these prior crimes to prove opportunity, plan, knowledge, intent, or identity because they involved the use of a magnetic strip encoder to change the magnetic information on credit cards. The government contended "(b)oth the prior access card crimes and the crimes charged here required defendant to encode the magnetic strip of a card ... to trick the bank into believing that the real account holder was the person seeking payment." Appellant's Excerpts of Record (# 6), p. 6. Appellant responded that he pleaded guilty to fraudulent use of another's access card and that the alleged similar conduct concerned only the dismissed charges. See Appellant's Excerpts of Record (# 7), p. 6.
 
 
 15
 After a lengthy discussion of the similarities and differences of the prior and instant crimes, the trial court held that although the prior crimes were not identical to the federal crimes, they were similar enough to be admissible under Fed.R.Evid. 404(b). Transcript of August 1, 1989, pp. 43-52.
 
 
 16
 The similarity between the California state crimes and the federal offenses is not obvious from the face of the guilty plea. However, the prosecution did not merely introduce evidence of appellant's prior conviction. The testimony of Sandy Minicucci demonstrated that appellant's prior crimes involved using an encoder to change track two of a card's magnetic strip. Reporter's Transcript, Vol. II, pp. 77-79. Although the automatic teller machine scam here involved a second step and was more sophisticated, a common denominator in both crimes was the use of an electronically altered credit card. In both cases, appellant had used an encoder to alter track two of a credit card's magnetic strip. Under these circumstances, evidence relating to appellant's prior crimes was admissible under Fed.R.Evid. 404(b).
 
 
 17
 (4) Appellant contends that it was error to deny his request for a hearing regarding a suppression motion.
 
 
 18
 A magnetic strip encoder machine was seized from appellant's residence during the investigation that resulted in appellant's 1988 state court prosecution. Appellant filed a motion to exclude that evidence as to the pending federal prosecution. The District Court denied the motion without a hearing on the ground that appellant had waived his opportunity to object to the evidence by not moving to suppress in the state court proceeding. Reporter's Transcript of July 3, 1989, p. 5.
 
 
 19
 The exclusionary rule does not automatically prohibit the use of unlawfully seized evidence in a subsequent unrelated prosecution. Rather, the court must inquire whether exclusion in the later proceeding would serve the ends of deterrence the rule was designed to promote. United States v. Lopez-Martinez, 725 F.2d 471, 476 (9th Cir.1983), cert. denied, 469 U.S. 837 (1984). Here, the prosecutions in question were separated by two years, resulted from investigations conducted by unrelated authorities and involve a different (though similar) set of criminal acts. Assuming arguendo that there is a Fourth Amendment violation in connection with the October, 1987 search that would have resulted in the exclusion of evidence in the state court proceeding,*** no additional measure of deterrence would be provided by excluding the evidence in appellant's federal prosecution. See id. Therefore, while the district court's "waiver" rationale may have been flawed, the evidence was nevertheless properly admitted in the subsequent, unrelated federal prosecution. There was no error in denying appellant's motion to suppress.
 
 
 20
 (5) Appellant contends that he was wrongfully denied discovery of exculpatory evidence ("Brady" material).
 
 
 21
 Prior to trial, appellant made a discovery request for files relating to a criminal case entitled United States v. Mark Koenig, et al., CR 89-118-PAR. The District Court denied the motion. Appellant argues that it was error to deny the discovery request because it precluded him from arguing that others were committing similar crimes and may have committed the offenses with which appellant was charged.
 
 
 22
 Koenig was a case involving automatic teller machine fraud in which all of the defendants confessed and pleaded guilty. Ms. Minicucci testified in detail that the modus operandi in Koenig had no similarity to or connection with appellant's case. Reporter's Transcript, Vol. II, pp. 223-243.
 
 
 23
 Reversal for the prosecution's failure to provide exculpatory evidence required under United States v. Brady, 373 U.S. 83 (1963), is warranted only where there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Marashi, 913 F.2d 724, 732 (9th Cir.1990) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).
 
 
 24
 The discovery material requested by appellant was not exculpatory and the prosecution's refusal to disclose it did not result in a reasonable probability that the outcome of appellant's trial would have been different.
 
 
 25
 (6) Appellant alleges that the District Court erred in denying his motion for a mistrial after a witness testified that he offered appellant a polygraph examination.
 
 
 26
 On direct examination, Mr. Keith Edwards, a special agent with the Secret Service, described his interview with appellant. The prosecutor then asked, "What further did he say?" Mr. Edwards responded, "I asked him--he said he did not bank at Coast Savings Bank, and I subsequently asked him if he would take a polygraph examination." Reporter's Transcript, Vol. II, p. 276. Appellant's counsel objected immediately. The court sustained the objection and advised the jury to disregard the reference to a polygraph examination. After cross-examination, the jury was excused and appellant moved for a mistrial. The motion for mistrial was denied. No further mention of polygraph evidence was made.
 
 
 27
 Special Agent Edwards testified that he asked whether appellant would take a polygraph. The objection came before he could indicate whether appellant had agreed or the results of any test.
 
 
 28
 The jury could not reasonably have reached any unduly prejudicial conclusion about appellant's guilt from the mere mention of a request to take a polygraph test. In addition, the court's limiting instruction cured any harm.
 
 
 29
 (7) Appellant contends in his supplemental brief that it was an abuse of discretion for the district court to order restitution in an amount he could not pay. We disagree. The jury found that appellant stole approximately $238,000 and the district court ordered him to repay that amount. There was no abuse of discretion.
 
 
 30
 We find no error. Appellant's conviction is AFFIRMED.
 
 
 
 *
 The Honorable Michael R. Hogan, United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 ***
 The Declaration of Gabriel S. Ortega submitted in support of the government's response (# 22) to the motion to suppress indicates that the items were lawfully seized pursuant to a consensual search authorized by appellant's father. See also Exhibits of Other Crimes (# 25)